UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
RODGER RICKETTES

                             Plaintiff,

              -against-                                12 CV 6427 (SMG)

POLICE OFFICER VINCENT TURTON and
POLICE OFFICER DANIEL REYES,

                             Defendants.

--------------------------------------------------------------------X

**Plaintiff's Opposition to Defendant's Motion to Set Aside the Verdict**

Office of Michael S. Lamonsoff
32 Old Slip, 8th Floor
New York, NY 10005

## <u>TABLE OF CONTENTS</u>

I.    Preliminary Statement……………………………………………………………2

II.   Summary of Trial Testimony…………………………………………………....4

    a.   Roger Rickets……………………………………………………...……5

    b.   Daniel Reyes……………………………………………………………6

    c.   Vincent Turton……………………………………………………………9

III.  Plaintiff's Evidence Admitted at Trial…………………………………………11

IV.   Standard of Review………………………………………………………....12

V.    Argument

    a.   The Defendant's Failure to Annex the Complete Transcript is Fatal to their
       Motion……………………………………………………………13

    b.   Reyes is not Entitled to Judgment as a Matter of Law on the Plaintiff's Excessive
       Force Claim……………………………………………………...14

        i.   The Jury Found that Plaintiff was not Holding or Grabbing the Knife when
          Reyes Broke his Finger……………………………………………15

        ii.  The Jury Could have Reasonably Inferred that the Mace Adversely
          Affected the Plaintiff…………………………………………17

    c.   Reyes is not Entitled to Qualified Immunity……………………………19

    d.   The Qualified Immunity Defense Fails because the Defendant Failed to Make a
       Proper Factual Predicate……………………………………………21

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
RODGER RICKETTES

                     Plaintiff,

        -against-

POLICE OFFICER VINCENT TURTON and
POLICE OFFICER DANIEL REYES,

                 Defendants.

-------------------------------------------------------------------X

**AFFIRMATION
IN OPPOSITION**

12 CV 6427 (SMG)

        Joseph E. Gorczyca, an attorney duly admitted to practice in the Eastern District of New York affirms pursuant to 28 U.S.C. § 1746 under the penalties of perjury that the following is true and correct:

## I. PRELIMINARY STATEMENT

        On December 17, 2014, a duly empanelled jury returned a verdict in favor of Roger Rickettes ("Rickettes") against defendant, Police Officer Daniel Reyes ("Reyes") on the excessive force cause of action, pursuant to 42 U.S.C. § 1983.  The jury found that Rickettes proved "by a preponderance of the evidence that [Reyes] intentionally or recklessly subjected him to excessive force on July 3, 2012. See Verdict Form, Question 1 annexed as Exhibit "A". The jury found that plaintiff did not establish to a preponderance of the evidence that Police Officer Vincent Turton ("Turton") used excessive force. Id.  The jury also found that plaintiff proved by a preponderance of the evidence that he incurred compensatory damages in the amount of $100,000 "as a result of being subjected to the intentional or reckless use of excessive force." See id. at Question 2(a) and (b).  The jury declined to award punitive damages. Id. at Question 3.

        Following the jury's initial deliberations and their completion of the Verdict Form, Chief

Magistrate Gold sent the jury additional questions.  <u>See</u> Special Interrogatories annexed as Exhibit "B".  These additional questions were specifically designed to address qualified immunity issues raised by defense counsel.  In the Special Interrogatories the jury concluded that "defendant Reyes use[d] excessive force when he hit the plaintiff on his arms and legs with his asp."  <u>Id.</u> at Question One.  The jury stated that they were "unsure" whether or not plaintiff's finger was struck before the defendants' saw a knife.  <u>Id.</u> at Question 2.  The jury did conclude that the knife was not open when the defendants first saw it.  <u>Id.</u> at Question 4(a).

Defendant Reyes is asking this court to disregard the jury's findings and to set aside a jury verdict as against the "weight of the evidence, or in the alternative, on the grounds of qualified immunity".  <u>See</u> Nimick Memorandum of Law at pg. 2.  The defendant is only seeking an outright dismissal of the plaintiff's complaint because they did not ask for a new trial on the issues and did not challenge the jury charge on the law.  Thus, the defendant's motion is governed by the extremely high standard set forth in FED. R. CIV. P. 50.

Defendant is not entitled to judgment as a matter of law as the jury was properly instructed on the law and was presented with all of the evidence and reasonably concluded that excessive force was recklessly or intentionally used on the plaintiff, which was the proximate cause of his damages.  Dismissal based upon qualified immunity is similarly not appropriate as it cannot be established, as a matter of law, as there are no mistakes or accidental conduct and the jury made a reasonable determination based on stark factual issues.  The jury did not find that the knife was open and defendant did not establish Reyes reasonably believed that the knife was open.  <u>See</u> Verdict Sheet at Question 4(a).

3

## II. <u>SUMMARY OF TRIAL TESTIMONY</u>

### A. <u>ROGER RICKETTES</u>

Mr. Rickettes testified that he remembered July 3, 2012 because it was the worst day of his life. <u>See</u> Trial Testimony ("TT") at pg. 43, lns. 21-25. He had worked that evening at Pardes Restaurant where he had been employed for two and half years as a dishwasher. His shift finished at 1:15 a.m. and he headed for the Atlantic Avenue station to go home. <u>Id.</u> at pg. 44, lns. 16-25. When he got to the station the train was arriving and he boarded the train in the middle. <u>Id.</u> at pg. 44, lns. 18-21. He usually walks to the last car and sits there because there are less people in there at night, and less problems. <u>Id.</u> at pg. 46, lns. 1-5. Mr. Rickettes was carrying his wallet, two asthma pumps, an iPhone, and a knife because he leaves work late at night and lives in a tough neighborhood. <u>Id.</u> at pg. 47, lns. 2-4. While he was sitting, listening to his music, two people approached him, they were in regular clothes and did not have visible badges. <u>Id.</u> at pg. 47, lns. 10-22.

Mr. Rickettes testified that one of the men asked for his ID and he gave it to him. <u>Id.</u> at pg. 48, lns. 22-24. When the train stopped at Franklin Avenue Turton told him to get off the train and Mr. Rickettes asked "for what?". <u>Id.</u> at pg. 49, lns. 20-23. Mr. Rickettes complied with the request. <u>Id.</u> at pg. 50, lns.1-2. After he got off the train he walked to the wall, as instructed. He turned around to face Turton and he was told to turn back around, Mr. Rickettes asked "for what?" and the partner started to mace him. The two defendants maced him until he heard the can go empty. After that the plaintiff was struck on his right arm, right leg and testicles. Reyes hit him on his left leg and the left side of his back. When he was hit, his knife fell out of his pocket and he heard it fall to the ground. One of the officers said "oh, he got a knife" and the officer bent to retrieve it. Then two uniformed officers appeared, told him to get on the floor and

4

cuffed him. Id. at pg. 50, lns. 13-25 and pg. 51, lns. 1-4.

Mr. Rickettes testified that before the knife fell out of his pocket, he was hit. He testified that he never attempted to grab the knife and that the knife was closed when it hit the ground. Specifically, Mr. Rickettes testified as follows:

Q:    Sir, is that the knife you had on you that night?
A:    Yes, it is.
Q:    Just so we're clear: When it hit the ground, was it open or closed?
A:    It was closed.
Q:    Was it ever open during your entire encounter with the police officers?
A:    No.
Q:    Going back, I meant to ask you this before. As you were exiting the subway car, before anything happened, did you make contact with either one of the officers?
A:    No.
Q:    Did you shove them in any way?
A:    No.

Id. at pg. 51, lns. 6-19. Mr. Rickettes also stated that he was standing when the knife fell out of his pocket. See id. at pg. 50, lns. 13-25.

Mr. Rickettes testified that "later on" after being sprayed with the mace, he could not breathe. Id. at pg. 54, lns. 1-2. Once he arrived at the station house he told the desk sergeant he could not breathe and they poured water on his face and eyes. Id. at pg. 56, lns. 1-3. At the station house, Mr. Rickettes complained that the defendants had broken his finger. Id. at pg. 56, lns. 4-9.

On cross examination, Mr. Rickettes testified that when asked, he handed over his ID, and that he was asked to step off the train at Franklin Street, which he did. Id. at pg. 107, lns. 6-25. Mr. Rickettes was told to walk to the wall, which he did. Id. at pg. 108, lns. 12-21. Mr. Rickettes testified as follows on cross examination:

> The officer told me to walk to the wall, walk to the wall, and I turned back around to face the officer and asked me to turn back around and I said to him for what because he didn't tell me anything or any, stop anything. And they --the white officer started to mace

me. Then the two of them started to mace me and they started hitting me, hitting with an asp, the asp stick.

Id. at pg. 109, lns. 4-10.

Mr. Rickettes testified that the beating went on for five minutes and that during that time he was standing still with his arms at his side.  He did not raise his arms or duck down or run away. Id. at pg. 124, lns. 1-13.  He testified that he never took a swing at the officers and never pushed them. Id. at pg. 125, lns. 15-19.

With respect to the allegation that he was struck in the hand in order to get him to drop the knife, Mr. Rickettes testified:

Q:      We heard some testimony on direct examination that you were hit and you broke
        your finger; is that right?
A:      Yes.
Q:      Your pointer finger on your right hand?
A:      Yes.
Q:      And you claim that this happened while you were just standing there?
A:      Yes.
Q:      Just happened to hit you right here and break your pointer finger?
A:      Yes
Q:      Well, it's true, isn't it, that you would have your finger -- let's say if you had
        reached down to pick up your asthma pump, you would grab it with your pointer
        finger right?
A:      My whole hand.
Q:      Right. And you would -- that's how you pick up your knife, your whole hand?
A:      If I did that, the damage would have been more severe.
Q:      Well, you broke your finger right?
A:      The other fingers didn't get injured.
Q:      It would have been more severe, because you were being beaten so badly right?
A:      *No. If I grabbed it, if I grabbed something and they hit me like this, all the fingers
        would get damaged*.

Id. at pg. 129, lns.10 - pg. 130 line 9 (emphasis added).

**B. DANIEL REYES**

Reyes testified that he was working as a plainclothes police officer on July 3, 2012.  See

TT at pg. 10, lns. 4-8.  His partner was Vincent Turton and they were riding the 2/3 subway train

that night.  Id.

Reyes stated he first observed Rickettes acting "suspicious" because "[w]hen he came in the train, we were already sitting down.  He came in and he looked around.  Then he proceeded and continued to walk towards the next train car, and he looked in, opened the doors, and went into the next train car. That's why he looked suspicious to us." Id. at pg. 11, lns. 3-8.  He did acknowledge that "[e]verybody ha[s] their own reason where to sit on the train." Id. at pg. 7, lns. 3-4.  The defendants were stopping the plaintiff for walking through subway cars while the train was moving, which is a minor violation of New York City Transit Rule of Conduct Section 1050.9(4).  Id. at pg. 7, lns. 8-20.  The maximum punishment is a $75 fine.  Id.

When the defendants approached Mr. Rickettes, he was sitting down quietly and wearing headphones.  See id. at pgs. 12-13, lns. 17-2. The officers asked for Mr. Rickettes' identification and he complied.  Id. at pgs. 25-6, lns. 24-1. The officers asked Rickettes to de-board the train and he complied with that instruction as well.  Id. at pg. 26, lns. 2-3.  He also complied with the defendants' instruction to walk to a certain spot on the train platform.  Id. at pg. 26, lns. 4-5. Most importantly, he placed his hands in the air to surrender.

Q:      So, would you agree with me that at that moment, his hands were in the air?
                  Ms. Speight: Objection
                  The Court: Overruled
A:      Yes.

Id. at pg. 25, lns. 17-21. Unfortunately for Mr. Rickettes, Reyes testified that placing ones hands in the air "is not a point of surrender." Id. at pg. 26, lns. 7-9.

Immediately after Rickettes placed his hands in the air, Reyes testified that the plaintiff threw a punch and hit Turton.  Id. at pgs. 27, lns. 8-10 (Q: And you just testified that you thought he got hit, Officer Turton? A: From the view, I saw him get hit.").  This testimony was directly contradicted by his prior sworn deposition testimony where he specifically stated that Mr.

7

Rickettes "missed him." See id. at pg. 28, lns. 3-16.

Reyes testified that after Mr. Rickettes threw a punch, he and Turton "basically gave [Ricketts] another chance". Id. at pg. 31, lns. 2-7.  His testimony was unequivocally refuted by Turton.

Q:    And Officer Reyes testified that when [Ricketts] threw a punch at you, you were going to give him another chance, correct? You heard that testimony?
A:    Correct.
Q:    Do you agree with that testimony?
A:    No.

Id. at pg. 240-41, lns. 23-3.

After the first punch, Reyes testified that Rickettes continued to resist arrest.  Id. at pg. 30.  At that point, *and before the knife came out of plaintiff's pocket*, Reyes took out his asp and began to repeatedly strike the plaintiff across his body.  Id. at pg. 32, lns. 18-20 ("I used it [the asp] before the knife came out.").  Reyes testified that he repeatedly struck the plaintiff with the asp on his left arm, left leg, right leg and right arm.  Id. at pg. 34, lns. 11-15 ("That's why I said most likely because I don't recall. Most of the hits was on his left side. I could have hit him on the other side, but most was on his left side.").  Reyes was unsure how many times he struck the plaintiff with the asp before he saw a knife.  Id. at pg. 38, lns. 3-8.

Reyes also testified that he threw Ricketts down to the ground on multiple occasions before the knife was on the ground.  Id. at pgs. 34-5, lns. 22-5 ("It could have been anywhere from two to three times.").  After the second time, Reyes testified he saw a knife.  Id. at pg. 35, lns. 13-15.  Reyes testified at trial that the knife was open and the blade was visible, however, his testimony was impeached again by his prior deposition testimony where he answered that the knife was not open.  Id. at pgs. 35-37.  After seeing the knife, Reyes proceeded to strike the plaintiff repeatedly on his right hand.  Id. at pg. 38, lns. 1-2.  Thereafter, additional units

responded and the plaintiff was arrested and detained. Id. at pg. 43. Reyes only reported injury was a minor twisted ankle from when the plaintiff fell on him. Id. at pg. 40, lns.11-24. Reyes reported no injuries to his face, arms or hands as a result of this encounter. Id. In total, Reyes testified the entire interaction where force was being used lasted between three and five minutes. Id. at pg. 39, lns. 14-18.

## C. VINCENT TURTON

Turton testified that he witnessed plaintiff enter his train car wearing headphones. See TT at pg. 221, 223. He and Reyes then followed plaintiff through several cars to the last car where they approached. Id. at pg. 227, 258. Turton also admitted that Plaintiff complied with all of the defendants' requests, including that he take off his headphones, produce identification, exit the train and get against the wall. Id. at pg. 227-229, 260-61. Turton testified that plaintiff approached him. Id. at pg. 92. Turton put out an arm, told plaintiff to stop, and plaintiff complied. Id. at pg. 93. Turton testified that after a short pause, plaintiff came toward him again, this time pushing the defendant. Id. at pg. 233, 267. That testimony was directly contradicted by his prior sworn testimony where he specifically stated that this second approach involved plaintiff grabbing for Turton's radio as Turton attempted to call for backup. Id. at pg. 236.

Turton testified that he then took out his mace and, while all three parties remained standing, deployed two or three bursts into Mr. Rickettes' face as Reyes continued to grab for plaintiff's hands. Id. at pg. 241, 271-72, 274. As that happened, Reyes took out his metal baton and began to strike plaintiff, possibly about the thighs and arms. Id. at pgs. 243 and 274. The strikes and mace had no effect on plaintiff. Id. at pg. 275-76. Turton testified that he then grabbed for plaintiff's hands and wrists and the three parties fell to the ground. Id. at pgs. 244 and 277. During the struggle, Turton asked Reyes if Reyes would hand Turton his mace canister

as Turton's had gone empty, and Reyes obliged. Id. at pg. 276. Turton grabbed plaintiff's wrist

and then heard a 'kling' sound. Id. at pg. 279. Turton then heard his partner yell, "knife, knife,

knife" and Turton saw the knife on the ground next to his foot.  Id. at pg. 248, 279 He then

witnessed Reyes strike plaintiff two or three times on the hand. Id. at pg. 281.  Turton then

attempted to kick the knife over to officer Reyes, couldn't, and Reyes reached out and pulled the

knife towards himself with his asp. Id. at pgs. 248 and 283. Backup arrived shortly thereafter. Id.

at pg. 284.  Turton explained that Reyes had called for backup, though for a "nonemergency", at

approximately 1:36 a.m. and that the entire incident lasted approximately three minutes. Id. at

pgs. 284 and 298. Turton complained to the responding officers of the effects of the mace,

including burning to his eyes and skin, and an ambulance was called for that specific reason. Id.

at pgs. 300 and 310.

　　　The preceding paragraph provides the most cogent version of events offered by Turton.

While it contradicts the other two parties' testimony in significant and material ways, Turton was

unable to offer that version of events without also contradicting himself. He testified at one point

that he first saw the knife on the ground, and at another point that he first saw it in Reyes' hand.

Compare id. at pg. 258 with id. at 259. He provided yet another version, apparently aware that he

was doing so, testifying that the knife was on the ground when he first saw it, but that Reyes

struck plaintiff's hand because while the knife was on the ground, plaintiff had a fist clasped

around the handle.  Id. at pg. 279. Most people would refer to that as a person holding a knife,

yet defendant refused several opportunities to definitively state he saw plaintiff *holding* the knife.

Turton also testified at one point that he did not know what plaintiff grabbed for when he first

grabbed for him, yet he earlier testified that plaintiff specifically succeeded in grabbing Turton's

hand.  Compare id. at pg. 234 with id. at pg. 236. He testified that he did not complete his radio

10

call to investigate open warrants or the like because plaintiff pushed him, and at a different time, simply because he saw plaintiff walking toward him and that it did not feel right. Compare id. at pg. 234 with id. at pg. 266. Turton contradicted himself yet again, stating first that Rickettes attempted to punch him and then struck him with a backhand swing and later testifying that Rickettes first hit him with a backhand swing and then attempted to punch him. Compare id. at pgs. 238-39 with id. at pgs. 270-71. Turton testified he only believed Reyes struck plaintiff in the arms and thighs but then upon prompting by defense counsel, was willing to provide a definitive response. Compare id. at pg. 243 with id. at pg. 275.

### III. **PLAINTIFF'S EVIDENCE ADMITTED AT TRIAL**

Plaintiff admitted the following items of evidence at the trial in support of his claims:

- Six (6) Photographs of the plaintiff depicting his right hand at the hospital (Plaintiff's 11A and 11B), the shirt plaintiff was wearing at the time (Plaintiff's 11C), bruising on the plaintiff's right arm (Plaintiff's 11D), bruises on the plaintiff's right leg at the hospital (Plaintiff's 11E), and plaintiff's right finger several months after the incident (Plaintiff's 11F).

- Medical records from Kings County Hospital (Plaintiff's 8) detailing ten (10) medical visits from July 3, 2012 to November 19, 2012 for the treatment of his broken finger and injuries to his testicles.

- Medical records from Dr. Barry Katzman, MD (Plaintiff's 9) including progress notes, medical bills and operative report for the surgery performed on February 12, 2013.

- X-ray films (Plaintiff's 9A) from Kings County Hospital depicting the plaintiff's fractured finger.

- Plaintiff's W-2 Wage and Tax Statement from 2012 (Plaintiff's Exhibit "2" documenting

his lost wages.

- Plaintiff's Paystubs from "Pardes Restaurant" (Plaintiff's Exhibit "4" documenting his income.

- The baton or "asp" (Plaintiff's 12) used to strike the plaintiff.

## IV. **STANDARD OF REVIEW**

Rule 50 of the FED. R. CIV. P. governs the defendant's motion since the jury decided that Reyes used excessive force and that excessive force caused the plaintiff to suffer $100,000 in compensatory damages. See Exhibit "A".

Rule 50 imposes "a heavy burden on a movant." Cash v. County of Erie, 654 F.3d 324, 333 (2d Cir. 2011). "That burden is 'particularly heavy' where, as here, 'the jury has deliberated in the case and actually returned its verdict' in favor of the nonmovant." Id. at 333, citing Cross v. N.Y.C. Transit Auth., 417 F.3d 241, 248 (2d Cir. 2005). Indeed, " a court may set aside the verdict only 'if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it." Cash v. County of Erie, 654 F.3d at 333, citing Kinneary v. City of New York, 601 F.3d 151, 155 (2d Cir. 2010).

In addition to the "particularly heavy burden", the "court is required to draw all reasonable inferences in favor of the non-moving party. Zellner v. Summerlin, 494 F.3d 344, 370 (2d Cir. 2007). The court "may not make credibility determinations or weigh the evidence," because those are "jury functions, not those of a judge." Id. The trial court "cannot set aside the jury's credibility findings and cannot find for the movant based on evidence the jury was entitled to discredit." Id. "The court must bear in mind that 'jurors [are] not required to accept the

entirety of either side's account, but [are] free to accept bits of testimony from several witnesses and to make reasonable inferences from whatever testimony they credited." Medina v. Donaldson, 2014 WL 1010951, *6 (E.D.N.Y. 2014) citing Haywood v. Koehler, 78 F.3d 101, 105 (2d Cir. 1996)

In Weather v. City of Mount Vernon, 474 Fed.Appx. 821, 2012 WL 1193673 (2d Cir. 2012), the Second Circuit described the "high standard" that a party must meet to overcome a jury finding in an excessive force case:

> Where, as here, a jury has deliberated in a case and actually returned its verdict, a district court may set aside the verdict pursuant to Rule 50 only where there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men [or women] could not arrive at a verdict against him.

Id. at 822–23 (internal quotation marks and citations omitted).

In this case, the defendants cannot overcome their extremely high burden because there was ample evidence supporting the jury's verdict, including photographs depicting the injuries, medical records, medical testimony and plaintiff's own testimony.

## V. ARGUMENT

### A. THE DEFENDANT'S FAILURE TO ANNEX THE COMPLETE TRANSCRIPT IS FATAL TO THEIR MOTION.

As a preliminary matter, the defendant's motion must be denied since they failed to annex the complete trial transcript. See generally, U.S. v. Weiss, 491 F.2d 460, 468 (2d Cir. 1974) ("Experience teaches that quotations lifted out of the transcript can often be unintentionally misleading, since they usually fail to give a true or complete framework for and background of the allegedly prejudicial comments."). In Ventura v. Sinha, 379 Fed. Appx. 1, 3 (2d Cir. 2010), the Court stated in a civil rights case that: "to the extent that Ventura challenges

any aspect of the jury verdict, we cannot review that claim of error absent a complete trial

transcript." While the aforementioned cases involve appellate review and the interplay of Rule

10 of the Federal Rules of Appellate Procedure, the principle is virtually identical: a court cannot

properly review a jury verdict without a complete trial transcript.

The following items are missing from the defendants' motion papers: plaintiff's complete

testimony, Dr. Barry Katzman's testimony, a complete copy of Reyes' testimony, a complete

copy of Turton's testimony, opening statements, closing arguments, jury notes, court exhibits,

plaintiff's exhibits in evidence and defendants' exhibits in evidence.   Given the incomplete

record, the defendant's motion should be denied since it does not contain the full record.

### B. REYES IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THE PLAINTIFF'S EXCESSIVE FORCE CLAIM.

A review of the case law surrounding the use of excessive force demonstrates that the

decision reached by the jury was fully supported by the testimony, physical evidence and

reasonable inferences thereof. "A plaintiff's resistance is one of several factors into objective

reasonableness, and the Second Circuit has repeatedly held that "resistance to arrest does not

give the officer license to use force without limit in response." Tracy v. Freshwater, 623 F.3d 90,

99 (2d Cir.2010) (internal quotations omitted) citing Sullivan v. Gagnier, 225 F.3d 161, 166 (2d

Cir.2000)); see also, Johnson v. City of N.Y., 05–CV–2357, 2006 WL 2354815, at *5 (S.D.N.Y.

Aug.14, 2006) (Stein, J.) ("While not every push or shove ... violates the Fourth Amendment,

there surely would be no objective need to stomp and kick an individual already under police

control.") (internal citations omitted); Benson v. Yaeger, 05–CV–784S, 2009 WL 1584324, at *5

(W.D.N.Y. June 3, 2009) (Skretny, J.) (denying defendants' motion for summary judgment

because even though officers were permitted to use the degree of force necessary to effectuate

plaintiff's arrest, a jury could reasonably find that "windmill[ing]" plaintiff's shoulder in so doing

14

was unreasonable)" Williams v. County of Nassau, 2014 WL 4101545 (E.D.N.Y. 2014).

As stated in Adedeji v. Hoder 935 F.Supp.2d 557 (E.D.N.Y.2013), excessive force analysis "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake'".

### 1. THE JURY FOUND THAT PLAINTIFF WAS NOT HOLDING OR GRABBING THE KNIFE WHEN REYES BROKE HIS FINGER.

First and foremost, regardless of defendant's interpretation of the facts and the evidence, the jury found that plaintiff proved, by a preponderance of the evidence, that Reyes intentionally or recklessly subjected plaintiff to excessive force. See Exhibit "A", Question One.  It also found that the plaintiff's damages were proximately caused by the defendant's use of excessive force.  Id. at Question 2(a).  In addition, the jury was properly instructed on the law, often verbatim with standard proffered by the defendant in their motion papers.  Defendant has not demonstrated that sheer surmise or conjecture was at play when the jury reached their verdict and they have not demonstrated that fair minded persons could not arrive at such a verdict. As such, the verdict must stand.

This Court, in reviewing the evidence, in the light most favorable to plaintiff, may set aside the verdict if you agree with the one-sided version of events presented by defendant in their motion.  The reality of what transpired is quite different.  The facts surrounding the 3-5 minute encounter between Mr. Ricketts and the defendants vary depending on who is telling the tale. In fact, the defendants each vary their recounting of the tale and the details differ from officer to officer.  The jury sat and heard each side, saw all of the evidence and then they deliberated for approximately eight (8) hours. They decided which pieces of which story to believe and concluded that excessive force was used. The jury was not required to believe that this level of

force, this striking of the hand and the testicles and the back and the arms with an asp was reasonable.  The jury believed Reyes used excessive force, which was the proximate cause of the plaintiff's damages and these decision should not be disturbed.

The defendant's analysis begins with a wild and inappropriate leap in their analysis stating that "plaintiff was in possession of a deadly weapon," apparently intending to mean that jury was required to believe that he was holding the knife in his hand in a menacing way, and that the defendants were therefore justified in breaking that hand.[1] See Deft. Aff. at 10. Plaintiff denies that this is true. See TT at pgs. 51, lns. 16-17 ("Q: Did you ever attempt to grab the knife? A: No."). There was a major factual discretionary regarding whether plaintiff was actually holding the knife. Id. at pgs. 246-248 (containing impeachment of Turton by his prior testimony where he initially stated that he first observed the knife by the plaintiff's foot.) Most importantly, defendant's assertion is simply not required by the jury's findings as the jury did not indicate that plaintiff's finger was broken either because he held the knife or was reaching for it. See Special Verdict Sheet at Question 2.  Indeed, both defendants admitted that plaintiff was struck repeated with the asp before the knife was ever in play. Id. at pg. 173, ln. 23 ("I used it [the asp] before the knife came out.").  It is therefore entirely reasonable and consistent that the jury could have determined that plaintiff showed by a preponderance of the evidence that Reyes was unreasonable in breaking his hand but were unsure as to which of the numerous blows broke plaintiff's hand. The jury determined that plaintiff met his burden in demonstrating that the numerous strikes with the asp *and* the breaking blow was unjustified. The jury's uncertainty about the timing of the hand breaking blow in relation to the appearance of the knife simply does

---

[1] There is no question that plaintiff possessed the closed knife from the moment of his first interaction with the defendants – defendants' reference at Point 1A to "possession of a deadly weapon" is therefore apparently meant to indicate that plaintiff possessed and controlled the knife in plain view and that defendants were aware of that. Defendants do not appear to intend to argue that their awareness of the knife closed and in plaintiff's pocket would have justified the use of deadly force.

not have the implications defendants assert. The blow could have occurred prior to the knife

appearing or after the knife appeared but before plaintiff reached for that knife. That explanation

easily and reasonably reconciles the jury's finding of excessive force and their uncertainty about

when exactly plaintiff's hand was struck. Defendant's misguided reliance on that one

interrogatory renders their assertion that "Officer Reyes merely str[uck] plaintiff several times

with his asp until he dropped the knife" unsupported, irrelevant, and completely counter to the

standard required in a Rule 50 motion.

Further, far from providing a justification for defendants to break his hand, plaintiff may

have been justified himself in reaching for his knife. The law simply does not require an arrestee

to idly accept an unjustified beating. See generally, People v. Carneglia, 405 NYS2d 298 (App.

Div. 2d Dept. 1978)("Where the evidence adduced at the trial permits the inference that the

defendant was the victim of an unprovoked police assault by the use of excessive physical force

in effectuating an arrest, he is entitled to a charge that reasonable acts of self-defense are

justifiable…"). The jury could have reasonable inferred that the sequence of events transpired as

follows: Turton maced the plaintiff, Reyes then began to beat plaintiff with his baton, a knife and

asthma pump then fell from plaintiff's pocket, that Reyes continued to beat plaintiff, including

the hand breaking blow, and plaintiff only later grabbed for the knife. Based on that sequence

alone -- which is supported by the record and reasonable inferences allowed thereof --

defendant's attempt to overturn the jury's verdict must be denied.

### 2. THE JURY COULD HAVE REASONABLY INFERRED THAT THE MACE ACTUALLY ADVERSELY AFFECTED THE PLAINTIFF.

Defendants rely heavily on their assertion that the mace utilized by Turton did not have

an effect on plaintiff, straining to show that plaintiff's testimony that the pepper spray did not

have an effect "at that point" meant it never had an effect at all. (Def't Aff. at 12). In addition to

17

that testimony, plaintiff also testified that the metal asp was bent against his body and that both officers utilized batons against him, facts which have been shown to be incorrect. Those facts demonstrate plaintiff's unclear recall, but they did not sway the jury from finding excessive force was utilized against him.

Further, context matters. The defendants sat in the courtroom as plaintiff offered his testimony regarding the pepper spray. They then both offered self-serving testimony justifying their own and their partner's actions, testifying that while the mace did affect them, requiring Turton to seek treatment and transportation in an ambulance, it did not do anything to plaintiff. As discussed above, a jury is required to weigh the evidence before it along with its own experience and reasonable inferences gleaned therefrom. It is not required to ignore common sense. See Medina at 2014 WL 1010951, *6 ("[t]he court must bear in mind that jurors [are] not required to accept the entirety of either side's account, but [are] free to accept bits of testimony from several witnesses and to make reasonable inferences from whatever testimony they credited.") (internal citations omitted). In the absence of expert testimony providing any credence to defendants' pepper spray immunity theory, it was entirely reasonable for the jury to conclude that when Turton emptied two cans of mace into plaintiff's face he would have been debilitated. This is so particularly given that Turton testified the same batch of mace caused not just burning to his own eyes, but to his skin. Even if plaintiff closed his eyes, the direct blasts of pepper spray would have had an effect. Especially given that plaintiff later testified that after being maced he could not breathe. See TT at pg. 56, lns. 1-3 ("I tell the officer at the dest that I can't breathe. And he get a chair, pt me to sit on it, and pour water on my face."). It was reasonable for the jury to determine that plaintiff was not the first individual any of them had heard of to possess pepper spray immunity.

18

**C. Reyes is not entitled to qualified immunity.**

"Qualified immunity analysis is guided by two questions: first, whether the facts show that the defendants' conduct violated plaintiff's constitutional rights, and second, whether the right was clearly established at the time of the defendants' actions." Golodner v. Berliner, 770 F.3d 196, 201 (2d Cir. 2014). "We ask 'whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Terebesi v. Torreso, 764 F.3d 217, 231 (2d Cir. 2014) citing Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865 (1989). The court must consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, at 396, 109 S.Ct. 1865.

In this case, the plaintiff was being stopped for a minor violation of New York City Transit Rule of Conduct Section 1050.9(4). See TT at pg. 7, lns. 8-20. The maximum punishment for that violation is a $75 fine. Id. The plaintiff was not a known criminal.

> Q:    You have worked that beat for a year and half, you kind of knew some of the
>        people who did illegal or elicit functions on that train line; right?
>                  Ms. Speight: Objection.
>                  The Court: Overruled.
> A:    A few of them.
> Q:    Was Mr. Rickettes one of those people?
> A:    Not that I can recall.

See id. at pg. 220, lns. 16-23. In fact, plaintiff does not have a criminal record and has never been arrested before. Id. at pg. 41, lns. 7-8. Thus, the first factor under the Graham analysis clearly demonstrates that a reasonable officer would not consider using any force.

The remaining elements also favor Mr. Rickettes, when viewing the evidence in the most

19

favorable light to the plaintiff, because there is ample evidence that the plaintiff surrendered

before the knife came out and the defendant continued to strike him with his asp.  Specifically,

Reyes testified that plaintiff placed his hands in the air to surrender before the knife came out.

> Q:      So, would you agree with me that at that moment, his hands were in the air?
>            Ms. Speight: Objection
>            The Court: Overruled
> A:      Yes.

Id. at pg. 25, lns. 17-21. Unfortunately for Mr. Rickettes, Reyes testified

that placing ones hands in the air "is not a point of surrender." Id. at pg. 26, lns. 7-9.  Clearly, no

reasonable officer would continue to strike a suspect for a minor violation after he had

surrendered.

Striking the plaintiff with a retractable baton after he had surrendered is akin to striking a

plaintiff that is already in handcuffs.  Indeed, there is ample precedent supporting the denial of

qualified immunity defenses where the officers injured a suspect that surrendered and was

already in handcuffs.  See, e.g., Tracy v. Freshwater, 623 F.3d 90 (2d Cir 2010)

> Unquestionably, inflicting of pepper spray on an arrestee has a variety of incapacitating
> and painful effects . . . . Here, if a jury credited Tracy's version of the events and
> determined that Freshwater applied pepper spray after Tracy had already been handcuffed
> ***and was offering no physical resistance of police commands***, it might well conclude that
> pepper spray was unreasonable under the circumstances.

(emphasis added).

At the outset, it is submitted that defendant did not establish the facts necessary to prove that

Officer Reyes was entitled qualified immunity because they failed to seek further clarification as

to the "unsure" answers with respect to Reyes in the Special Interrogatories.  See Questions 2

and 4(b).  As such, those questions must be resolved in favor of the plaintiff due to the standard

set forth in FED. R. CIV. P. 50.  See Zellner v. Summerlin, 494 F.3d 344 (2d Cir. 2007) (holding

that the non-movant is entitled to "the benefit of all reasonable inferences that that the jury might

20

drawn in his favor from the evidence.").

In addition, the defendant failed to prove the elements necessary to establish qualified immunity based upon a fair interpretation of the jury's verdict sheets. The jury decided that Rickettes proved "by a preponderance of the evidence that [Reyes] intentionally or recklessly subjected him to excessive force on July 3, 2012. See Verdict Form, Question 1. The jury also found that plaintiff proved by a preponderance of the evidence that he incurred compensatory damages in the amount of $100,000 "as a result of being subjected to the intentional or reckless use of excessive force." See id. at Question 2(a) and (b). In the Special Interrogatories the jury concluded that "defendant Reyes use[d] excessive force when he hit the plaintiff on his arms and legs with his asp." Id. at Question One. The jury stated that they were "unsure" whether or not plaintiff's finger was struck before the defendants' saw a knife. Id. at Question 2. Those findings were made after the jury was instructed, often word for word, in line with the standard offered by defendant (see pgs. 9-10 of the Nimick Memorandum of Law), on the law governing qualified immunity and excessive force. Therefore, it is fair to conclude that the jury considered (especially light of the defendants' summation which focused almost exclusively on the reasonableness of the defendants' conduction) and rejected that defense.

### D.     THE QUALIFIED IMMUNITY DEFENSE FAILS BECAUSE THE DEFENDANT FAILED TO MAKE A PROPER FACTUAL PREDICATE.

As set forth more fully below, and with all due respect, this Court cannot decide the issue of qualified immunity, as a matter of law, without the proper underlying factual predicate. This Court recently addressed this issue in Milfort v. Prevete 3 F.Supp.3d 14 (E.D.N.Y.2014) holding that the lack of a sufficient factual record may, on its own, preclude the Court from making the legal determination of whether the Defendant is entitled to qualified immunity. See also, Kerman v. City of New York, 374 F.3d 93, 120 (2d Cir.2004) (reversing judgment as a matter of law

21

because defendant had failed to ask that the jury be given interrogatories specific enough to resolve the material factual disputes.) Defendant herein did not request specific enough interrogatories and the answers supplied by the jurors to the interrogatories did not establish entitlement to a qualified immunity defense. See also, Harewood v. Braithwaite --- F.Supp.3d ----, 2014 WL 6867942 (E.D.N.Y. 2014).

Defendant argues that if this Court finds that Reyes did utilize excessive force against the plaintiff that he is nevertheless entitled to qualified immunity.  Their argument must fail as there is simply no room for a qualified immunity analysis on the facts at issue presently.  The jury determined that Reyes' conduct was unreasonable and defendants have not demonstrated how that reasonableness inquiry changes in any material way through the prism of a qualified immunity analysis.

As outlined above, it was reasonable for the jury to have found that plaintiff did not establish a prima facie case against Turton, but did so against Reyes.  The jury may have determined that Turton maced plaintiff and that that was all that was necessary to bring plaintiff under arrest. During their eight hours of deliberation they may have used their common sense and close examination of the witnesses on the stand and evidence before them to determine that Reyes' first, non-breaking blow with the baton was enough to bring plaintiff under control.  They may have determined that plaintiff proved the use of mace was excessive by 49% rather than the 51% required to return a verdict in his favor and that the use of the baton reached that 51% threshold on the dot.  This uncertainty is not the speculation proscribed by Rule 50 – it is a demonstration of the numerous reasonable explanations for the jury's findings.

Whichever of the possible versions of event they found most likely, the jury clearly determined that while the knife fell from plaintiff's pocket and that at some point he reached for

it, at the moment Reyes broke plaintiff's hand plaintiff met his burden in showing that that force

was unreasonable. The most reasonable conclusion to draw from the information provided by the

jury is therefore that they determined that when Reyes broke plaintiff's hand he was not holding

the knife and he was not reaching for it. Defendants have provided no basis to disregard that

most reasonable conclusion. Their insistence on ignoring the most obvious reading of the

information before this Court, doggedly insisting that plaintiff was holding the knife at the time

of breaking blow, renders their entire motion moot and their entire analysis irrelevant.  Plaintiff

does not contest their analysis that if Reyes reasonably believed plaintiff was holding a combat

knife with an intent to commit a crime he would have been justified in striking plaintiff's hand,

even without the benefit of the lower qualified immunity standard. The jury was presented with

that possible version of events ably and vociferously by defense counsel at trial. They weighed

the evidence before them and they rejected it.

Defendants' insistence that the jury must have disregarded plaintiff's version of events

wholly because they determined that plaintiff did not meet his burden of proof with regard to

Turton is not supported by the law and is completely speculative. Further, as discussed above,

the jury is not just entitled to, but is encouraged, to analyze all of the evidence before it and to

pick and chose those aspects that appear true. The jury was presented with three materially

different versions of events which were often internally inconsistent in and of themselves.  They

are permitted to have found particular witnesses credible with regard to certain details and not

others. Defendants provide no legal support for their, frankly, illogical, claim that the jury must

have disregarded plaintiff's testimony in whole.

In the end, there is simply no reasonable mistake at issue here. Reyes commenced to beat

plaintiff with a metal baton prior to the appearance of any knife. The jury determined that he

broke plaintiff's hand without justification. The only reasonable conclusion available is that plaintiff was struck prior to reaching for the knife on the floor. That is precisely the type of factual determination jury's exist to make. The relief sought by defendants is therefore completely improper. Defendants have offered no cite to Reyes stating he wrongly believed plaintiff was holding a knife or was about to be when the breaking blow occurred. There is no basis to find that he is entitled to qualified immunity here.

## VI. <u>CONCLUSION</u>

Defendant is not entitled to judgment as a matter of law for the aforementioned reasons and their motion should be denied in its entirety.


DATED:      New York, New York
            February 9, 2015


                                    _____/s_____
                                    Joseph E. Gorczyca (JG0966)

Our File No: 19224